[Civ. No. 2965.   First Appellate District, Division One.—December 23, 1919.]

SAN ANTONIO UNION SCHOOL DISTRICT OF MONTEREY COUNTY, Appellant, v. ADA P. HUSTON, Respondent.

[1] CONTRACTS—USE OF PROPERTY FOR SCHOOL PURPOSES—ABANDONMENT—EVIDENCE.—In this action by a school district to compel specific performance of an alleged contract to convey certain real property and for the enforcement of a trust in the property, the letters and evidence introduced, given even their strongest construction in favor of the plaintiff, showed nothing more than a willingness on the part of defendant's predecessor that the school should take possession of an indefinite lot of land, a part of a given quarter-section, and use it for school purposes so long as it might need it therefor, or so long as the district might find it convenient to maintain the school in that particular location. The plaintiff, having ceased to conduct a school on the premises and having abandoned possession thereof to the defendant, waived all further right to possession for any purpose whatever.

APPEAL from a judgment of the Superior Court of Monterey County. J. A. Bardin, Judge. Affirmed.

The facts are stated in the opinion of the court.

Hugh R. Osburn for Appellant.

C. F. Lacey for Respondent.

BEASLY, P. J., *pro tem.*—The plaintiff, San Antonio Union School District of Monterey County, brought this action as successor in interest to the Franklin School District. From the prayer of the complaint the action was originally intended to quiet title to a small piece of property which is a part of the southwest quarter of the southwest quarter of section thirty-two, township twenty-two south, range eight east, Mount Diablo meridian. The entire quarter-section was patented to Joseph Alcorn on September 25, 1888, and by mesne conveyances the defendant acquired the legal title to the whole quarter-section on August 16, 1905, and, as will hereafter appear, the plaintiff at no time had the legal title to the acre in controversy.

Being met at the outset with the objection that an action to quiet title cannot be maintained by the holder of the mere equity against the holder of the legal title to real property, plaintiff's counsel in his brief apparently abandons the theory that the action is one to quiet title and insists that his client be given relief under the general prayer of the complaint for "such other and further relief as to the court may seem just and meet in the premises," and from the language of appellant's brief we infer that the plaintiff now seeks specific performance of a contract to convey made between Alcorn and the Franklin School District and "for the enforcement of a trust in this property," for the benefit of plaintiff. Although from the prayer of the complaint it appears very clearly that the plaintiff at first intended to rely upon a cause of action to quiet title to the lot, we are inclined to consider the case upon its merits, without regard to the form of the action.

[1] The plaintiff, in support of the contract to purchase which it now seeks to enforce, relies upon the following facts: Some time in 1886, and while Joseph Alcorn was the owner or in possession of the quarter-section of which this lot forms a part, C. G. Heinsen was trustee of the Franklin School District and wrote Alcorn, according to Heinsen's testimony, to know how much he would take for one acre of land upon which to build a schoolhouse, giving

no description, but mentioning the corner needed, and not saying whether or not the school district desired to purchase the corner in fee or to secure the mere right to build and maintain a schoolhouse thereon. Running through the correspondence and the testimony of Heinsen is the statement of the purpose for which the land was desired, namely, for school purposes. On December 27, 1886, Heinsen received an answer signed by Mrs. Alcorn, wife of the owner of the property, dated at Boulder Creek, California, and saying: "Your postal received and in reply will say that my husband thinks that twenty-five ($25) dollars is the price to ask for an acre of land for the schoolhouse." Seven months after the receipt of this letter Heinsen sent fifteen dollars, which Mrs. Alcorn received, and to this remittance Mrs. Alcorn sent a reply dated at Boulder Creek, July 24th, in which she said: "We have received fifteen dollars ($15) as part payment for the land for the schoolhouse." Mrs. Alcorn's name alone is signed to this letter. In none of the correspondence was the length or width of the acre given and nothing was said about the terms of payments, whether in installments or in cash. Heinsen testified that within a year or two after the first letter the remaining ten dollars was available to pay for the land and that he wrote for a deed, but did not send the money. No answer was received to this last letter. There were no other negotiations than those referred to in these letters. Mrs. Alcorn testified that she wrote the letter of December 27, 1886, at her husband's instance and there is no evidence of any written authority held by Mrs. Alcorn authorizing her to contract for the sale of the property. There is in the letters no agreement to sell. There is simply a recital of the price which Mr. Alcorn thought was proper for the land. Subsequently the Franklin School District fenced the property. Mr. Heinsen "stepped off" the acre the best he could and a substantial fence was built around it, and from that time until the organization of the San Antonio Union School District, the Franklin School District maintained a schoolhouse and kept a school on the property. The plaintiff, San Antonio Union School District, is the successor in interest of the Franklin School District. There is no evidence that Alcorn ever had actual knowledge of the occupation of the property by the schoolhouse. There seems

to be no evidence that he ever saw the property after this correspondence, and unless he must be held to have had constructive notice of what was going on upon his property, a point which we think it unnecessary to decide, he may be said not to have had any knowledge whatever of the erection of the schoolhouse or the possession of the Franklin School District.  Some time subsequent to July 1, 1916, the San Antonio Union School District was formed, as has been said, and took the place of four other districts of Monterey County, including the Franklin School District, and thereupon the Franklin schoolhouse was abandoned, and school ceased to be kept therein.  On the seventh day of September, 1916, after such abandonment, the defendant took possession of the property, claiming to be the owner under her chain of title from Alcorn.

After thirty years had elapsed a tender of the remaining ten dollars was made to Mrs. Alcorn.  The Alcorns had ceased to have any interest in the property on November 24, 1887.  No conveyance was ever made by any one of the various owners of this property to the Franklin School District and the entire right of the present plaintiff rests upon the validity of the agreement above set forth, if it constituted an agreement, and the subsequent action of the Franklin School District in fencing the land, taking possession thereof and building and maintaining a schoolhouse thereon.

Many of the elements necessary to sustain a demand for specific performance of this agreement are absent in this case, but in view of the construction which we think must be placed upon the evidence it seems to us unnecessary to go into the question of the rights to specific performance further than to say that specific performance cannot be decreed in this case because the demand for a deed should have been made to Mrs. Huston, the present owner of the record title to the entire quarter-section, rather than to Mrs. Alcorn, and the tender also should have been made to Mrs. Huston rather than as it was made to Mrs. Alcorn.

But the main obstacle to plaintiff's success in this appeal is that its contention, that in equity this agreement, taken with the improvement of the property, should be construed as creating a trust in the owner of the property in favor of the Franklin School District, cannot be upheld, and a

clarifying inquiry at this point might be: A trust deed of what title—a fee or a right to use the property for school purposes? The letters and the testimony of Heinsen show that all that was asked was land for the purposes of the school, and here some general knowledge of California history and usage, it seems to us, is of value as casting light on this transaction. Schoolhouses were moved thirty years ago in California from one part to another in country districts as the preponderance of population shifted from one part to another. And especially true was this in such country districts as this. It was not then unusual for owners of land to permit the use of their property temporarily for schoolhouses until a time came when the larger number of children would be served by the transfer of the school to some other section of the district. The letters, given even their strongest construction in favor of the plaintiff, show nothing more than a willingness that the school should take possession of an indefinite lot of land and use it for school purposes so long as it might be needed therefor, or so long as the district might find it convenient to maintain the school in that particular location. And, indeed, this is the view taken by the trial judge, who found that the plaintiff never had any right to use any of the real property described in the complaint except for the purpose of conducting thereon a public school, and that prior to the commencement of this action the plaintiff had ceased to conduct a school on the premises and had abandoned possession thereof to the defendant and had waived all further right to possession for any purpose whatever. And it seems to us that this position of the trial court is sound.

The judgment is affirmed.

Richards, J., and Kerrigan, J., concurred.